**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

LA RESOLANA ARCHITECTS, PA,
     a New Mexico Corporation,
          Plaintiff,

v.                                                    Civ. No. 05-1017 PJK/RHS

RENO INC. dba CLAY REALTORS ANGEL FIRE,
     a New Mexico Corporation,
SOUTHWEST INVESTMENT TRUST, LP,
     a New Mexico Limited Partnership,
LANCE K. CLAY,
     an individual,
GARY PLANTE,
     an individual, and
ANGEL FIRE HOME DESIGN,
     a New Mexico Corporation,
          Defendants,
*et al.*

**PLAINTIFF'S PROPOSED FINDINGS OF FACT**
**AND CONCLUSIONS OF LAW**

     Plaintiff La Resolana Architects, PA ("La Resolana") herewith provides hereby submits

its proposed Findings of Fact and Conclusions of law following a trial to the bench starting on

June 12, 2006.

**PROPOSED FINDINGS OF FACT:**

1.     La Resolana is an architectural firm.  The President of La Resolana is Earl Hilchey, who

     is a licensed architect with the State of New Mexico.

2.     Through an assignment dated April 1, 1997 from Mr. Hilchey, La Resolana is the owner

     of U.S. Copyright Registration No. VA 1-257-022 titled "Angel Fire Project Floorplan 1"

     for architectural artwork of an elevation view and an interior floor plan ("La Resolana's

     Copyrighted Architectural Works").

3.   Co-defendant Gary Plante is the President and Managing Partner of co-defendant Southwest Investment Trust LP.  Southwest Investment Trust is the party who owns the subject land in Angel Fire, New Mexico.

4.   Co-defendant Lance Clay is a realtor in Angel Fire, New Mexico, and is the owner of co-defendant Reno Inc.

5.   In approximately December 1996, Mr. Plante and Mr. Clay met with Mr. Hilchey and Larry Jones at Preferred Building Systems in Albuquerque to discuss the development of multi-home residential units proposed to be built in a housing subdivision near Country Club Road in Angel Fire, New Mexico (the "Community").  The proposed subdivision was to consist primarily of patio homes and townhomes.

6.   During the meeting, Mr. Clay and Mr. Plante requested Mr. Hilchey to design one or more residential unit architectural works which could be a basis for multiple residential units for the Angel Fire Community project, and further requested him to maximize the number of units that could be built for this project.

7.   Mr. Plante and Mr. Clay expressed their desire for each unit to have approximately two bedrooms, two baths, a single car garage and approximately 1200 square feet (heated space) in size.

8.   Multiple correspondence was sent by Mr. Hilchey to Mr. Plante by fax containing an evolution of interior floor plans, including the overall elevation design of a proposed structure, as well as the arrangement and composition of interior spaces and elements consistent with the elevation design.  Each set of revised floor plans was based on conversations Mr. Hilchey had with Mr. Plante, Mr. Clay and/or Daniel Behles (Mr. Behles was identified as a potential investment partner with Mr. Clay and Mr. Plante in

2

the Community).  These communications were sent on January 10, 1997, January 15, 1997, January 16, 1997, and January 23, 1997.  Mr. Hilchey sent almost all of the faxes to the Lamb, Metzger, Lines and Dahl law firm, who represented Southwest Investment Trust LP.  Others were sent to Mr. Clay and/or Mr. Behles.

9.    At some time prior to January 20, 1997, Mr. Plante wrote down Lance Clay's land-line phone number and gave it to Mr. Hilchey.  This phone number also functioned as Mr. Clay's fax phone number.

10.   Multiple correspondence was also sent by Mr. Hilchey to Mr. Plante, Mr. Clay and/or Mr. Behles by fax containing a proposed site development plan having thirty-eight (38) units, with each unit having a zero lot line adjacent to another unit, so that in total, there were nineteen (19) structures.   This correspondence was sent by fax on January 20, 1997, January 24, 1997, February 4, 1997, and March 27, 1997.

11.   Daniel Behles sent responding correspondence to Mr. Hilchey by fax on January 22, 1997, asking Mr. Hilchey to make certain modifications to his site development plan.

12.   Unbeknown to Mr. Hilchey, and only six days after Mr. Hilchey sent Mr. Clay a proposed site development plan containing nineteen (19) structures and a zero lot line on January 22, 1997, Mr. Clay submitted a site development plan to the Village of Angel Fire Planning and Zoning Commission on January 30, 1997.  According to the meeting minutes, Mr. Clay's proposed site development plan contained 19 structures having a zero lot line.

13.   Mr. Clay sent correspondence to Mr. Hilchey regarding the preparation of a site development plan in the Community, including sometime prior to January 20, 1997 and on March 11, 1997.

14.    At some point between February 4, and March 27, 1997, Mr. Hilchey authored an interior floor plan and a front side elevation architectural drawing which are the subject of La Resolana's Copyrighted Architectural Works.  These architectural designs clearly state: "COPYRIGHT 1997, EARL W. HILCHEY, ARCHITECT".

15.    Shortly after Mr. Hilchey received the March 27, 1997 fax from Mr. Clay regarding a revised site development plan, Mr. Plante called Mr. Hilchey to inform him the Village of Angel Fire was getting ready to approve the development and that Mr. Hilchey should call Mr. Clay and discuss the preparation of full construction architectural drawings.  Mr. Hilchey attempted numerous times to contact Mr. Clay, but Mr. Clay never returned Mr. Hilchey's phone calls.

16.    On April 28, 1997, Mr. Hilchey sent a fax to Mr. Jones of Preferred Building Systems, providing a copy of La Resolana's Copyrighted Architectural Works so that Mr. Jones could prepare a quote for the project on behalf of Preferred Building Systems. Mr. Jones then provided the quote for the project to Mr. Plante, along with a copy of the exterior facade and the interior floor plan.  Mr. Plante admits he received a quote for the project from Mr. Jones.

17.    From April 1998 to May 29, 1998, Mr. Hilchey left numerous voice messages for Mr. Clay and Mr. Plante to discuss the project. Neither Mr. Clay nor Mr. Plante returned any of Mr. Hilchey's messages.  As such, on May 29, 1998, Mr. Hilchey notified Mr. Plante and Mr. Clay by letter of La Resolana's copyright rights to the subject architectural artwork, and concluded that if Mr. Plante and Mr. Clay wanted to use the subject artwork, "we need to negoitate [sic] a fair compensation".  This letter was sent to Mr. Plante's business office (and the address of Southwest Investment Trust LP) located on 300

PLAINTIFF'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW

Central Ave. SW, Albuquerque, NM 87102.  Neither Mr. Plante nor Mr. Clay responded to this letter.

18.     In September 1998, twenty months after Mr. Hilchey authored La Resolana's Copyrighted Architectural Works, co-defendant Angel Fire Home Design prepared the first set of construction drawings upon the direction of Lance Clay (the "AFHD Drawings").  While minor differences exist, the AFHD Drawings are substantially similar to La Resolana's Copyrighted Architectural Works.

19.     Mr. Clay publicly stated in 1999 that if the Community project were no longer feasible, he would "have to come back through and resubmit" a new townhome design for approval by the Village of  Angel Fire in order to finish the project.

20.     Reno Inc. has publicly advertised in New Mexico and in interstate commerce that the townhomes in the Community are owned by Reno Inc.

21.     Mr. Clay, Reno Inc., Mr. Plante and Southwest Investment Trust LP (the "Remaining Defendants[1]") allege that a sketch created by Lance Clay was given to Mr. Hilchey at the December 1996 meeting, and that this same exact sketch was recreated twenty months later for Angel Fire Home Design, however, no objective evidence exists to support these allegations.   Rather, through the on-going discussions Mr. Hilchey had with the Remaining Defendants concerning the Community and the evidence presented, the Court finds that Mr. Hilchey is the original creator and sole author of La Resolana's Copyrighted Architectural Works.

22.     In approximately October 2003, Mr. Hilchey was in Angel Fire on another architectural

---

[1] Defendant Angel Fire Home Designs has settled this lawsuit with La Resolana during a Settlement Conference held on May 22, 2006, and will be dismissed from this case upon the execution of a settlement agreement.  As such, the phrase "Remaining Defendants" is used to identify the parties remaining in this lawsuit.

PLAINTIFF'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW

project.  Wondering what happened to the project in the Community, Mr. Hilchey drove by the Community and discovered that La Resolana's Copyrighted Architectural Works were being built as residential structures in the Community.

23.     Though their on-going discussions with Mr. Hilchey concerning the Community, the Remaining Defendants have had direct access to La Resolana's Copyrighted Architectural Works.  The Remaining Defendants then used La Resolana's Copyrighted Architectural Works to build substantially similar residential structures using substantially similar architectural designs of the architectural artwork provided by Mr. Hilchey, without permission from either Mr. Hilchey or La Resolana.

24.     Of the 32 units available in the Community, Mr. Clay and Reno Inc. have sold 18 of the units.

25.     Angel Fire Home Design has agreed that it will not promote itself or Charles Hasford as the original creator or author of La Resolana's Copyrighted Architectural Works.  It has further agreed to return all documents in its possession regarding the Community to Mr. Hilchey.

26.     Mr. Clay and Reno Inc. (the "Clay Defendants") provided substantially similar copies of La Resolana's Copyrighted Architectural Works to Angel Fire Home Design, to the Village of Angel Fire, to contractors, to subcontractors, and to prospective buyers.

27.     Under the direction and control of Mr. Plante, Southwest Investment Trust LP has sold to the Clay Defendants numerous real property lots upon which buildings based upon La Resolana's Copyrighted Architectural Works were built.  Southwest Investment Trust LP received from Clay Realty at least $12,500 per townhome sold.  As such, Southwest Investment Trust LP and Mr. Plante have benefited, and continue to benefit, from the

sales of buildings which are based upon La Resolana's Copyrighted Architectural Works.

28. As a direct and proximate result of Mr. Clay's., Reno Inc.'s, Mr. Plante's and Southwest Investment Trust LP's (the "Remaining Defendants") unlawful conduct, La Resolana has sustained damages under the United States Copyright Act, the United States Lanham Act and the New Mexico Unfair Trade Practices Act.

## PROPOSED CONCLUSIONS OF LAW:

29. Venue is properly laid in this District.

30. The District of New Mexico has jurisdiction over the parties in this case.

### I.       INFRINGEMENT - UNITED STATES COPYRIGHT ACT

31. Under the United States Copyright Act, a copyright is the exclusive right to copy. This right to copy includes the exclusive rights to reproduce the copyrighted work, prepare derivative works based upon the copyrighted work, distribute copies of the copyrighted work to the public, and publicly display a copyrighted work.  It is the owner of a copyright who may exercise these exclusive rights to copy.  The term "owner" includes an assignee.  17 U.S.C. § 101 *et seq.*

32. Architectural works are protected by the Copyright Act.  17 U.S.C. § 102(a)(8).  The Copyright Act defines an "architectural work" as "the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings."  17 U.S.C. § 101.  The copyright right in the architectural work includes the overall form of the architectural design as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features or

design elements that are functionally required.  *See* U.S. Copyright Office Circular 41, "Copyright Claims in Architectural Works".

33.   The Copyright Act defines a derivative work as "a work based upon one or more preexisting works[.]" 17 U.S.C. § 101.

34.   The Copyright Act protection does not ""extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b).

35.   Copyright law prohibits the reproduction or unauthorized use of substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce the rights to exclude others in an action for copyright infringement. Even though one may acquire a copy of the copyrighted work, the copyright owner retains rights and control of that copy, including uses that may result in additional copies or alterations of the work.  17 U.S.C. § 101 *et seq.*

36.   One who reproduces, prepares derivative works from or distributes a copyrighted work without authority from the copyright owner during the term of the copyright, infringes the copyright. 17 U.S.C. § 101 *et seq.*

37.   To prove that the Remaining Defendants infringed La Resolana's Copyrighted Architectural Works, La Resolana must prove (1) ownership of a valid copyright and (2) unauthorized copying of constituent elements of the work that are original. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942 (10th Cir. 2002).  In order to prove copying of legally protectible material, a plaintiff must typically show substantial similarity between legally protectible elements of the original work and the allegedly infringing work.  *Id.* at 936.  A plaintiff's presentation of a certificate of registration from the U.S. Copyright

Office usually constitutes prima facie evidence of a valid copyright and of the facts stated in the certificate. 17 U.S.C. § 410(c).  Upon presentation of such a certificate, the defendant bears the burden to overcome the presumption of validity. *Autoskill Inc. v. National Educational Support Systems, Inc.*, 994 F.2d 1476, 1487 (10th Cir. 1993).  To decide whether two works are substantially similar, a Court asks "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value."  *Jacobsen*, 287 F.3d at 942-943.

38.    The Remaining Defendants had access to La Resolana's work in light of their on-going communications with Mr. Hilchey and Larry Jones.  In light of such communications, the Remaining Defendants had a reasonable opportunity to view and copy La Resolana's Copyrighted Architectural Work, and use it as the basis for the derivative AFHD Drawings twenty months later.

39.    The AFHD Drawings are substantially similar to La Resolana's Copyrighted Architectural Works.

40.    Because the Remaining Defendants had access to La Resolana's Copyrighted Architectural Works, and subsequently used such works as the foundation to create the substantially similar AFHD Drawings as derivative works, the Remaining Defendants directly, contributorily or vicariously, copied and used La Resolana's Copyrighted Architectural Works in its entirety or substantially in its entirety for the specific purpose of infringing La Resolana's copyright rights without compensation to La Resolana, all to the benefit of the Remaining Defendants and to the detriment of La Resolana.  17 U.S.C. § 501.

9

41.     The Clay Defendants have directly infringed and will continue to infringe La Resolana's Copyrighted Architectural Works by their continued use and reproduction of the architectural artwork(s) for the Community, which are based upon, or are direct copies or substantially similar copies of, La Resolana's Copyrighted Architectural Works in violation of the United States Copyright Act.

42.     A party may be liable for contributory copyright infringement if the party induces, causes or materially contributes to the infringing conduct of another with knowledge. *Irwin v. ZDF Enterprises GMBH*, 2006 WL 374960, *4 n. 3 (S.D.N.Y. 2006).  A party may be held vicariously liable for copyright infringement by another if the party has a financial interest and the right and ability to supervise the infringing activity, whether or not the person knew of the infringement.  *See e.g. Irwin v. ZDF Enterprises GMBH*, 2006 WL 374960, *4 n. 3 (S.D.N.Y. 2006).

43.     Through their conduct, the Plante Defendants have contributorily infringed, and will continue to contributorily infringe, La Resolana's Copyrighted Architectural Works by their knowledge of La Resolana's Copyrighted Architectural Works, their participation in on-going discussions with Mr. Hilchey concerning the subject architectural works, and their material contributions to the Clay Defendants' direct infringement with the knowledge of La Resolana's claim of ownership of La Resolana's Copyrighted Architectural Works.

44.     Through their conduct, the Plante Defendants have indirectly infringed and will continue to indirectly infringe La Resolana's Copyrighted Architectural Works because the Plante Defendants had the right and ability to supervise the Clay Defendants use of the land within the Community, and have an obvious and direct financial interest in the

exploitation of copyrighted materials when townhomes based upon La Resolana's Copyrighted Architectural Works are sold in the Community.

45.   The Remaining Defendants are jointly and severally liable as copyright infringers.  *See Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985) ("All persons and corporations who participate in, exercise control over or benefit from an infringement are jointly and severally liable as copyright infringers."); *see also Cooper v. Sony Music Entertainment, Inc.*, 2002 U.S. Dist. LEXIS 16038, at *11 (S.D. Tex. 2002).

46.   La Resolana's injuries are a direct or indirect result of the Remaining Defendants' actions committed during the course of creating and developing structural townhomes in the Community.

47.   La Resolana is entitled to a permanent injunction restraining the Remaining Defendants, and any officers, directors, employees, agents, subsidiaries, distributors, dealers, contractors, subcontractors, licensees and any other persons in active concert or participation with any of them anywhere in the United States, is hereby preliminarily enjoined from using, copying, reproducing, packaging or repackaging, constructing, building, selling, adapting, publishing, offering for sale, advertising, distributing, marketing, telemarketing, advertising and/or placing advertising, leasing, transferring, displaying, developing, claiming ownership to and/or otherwise promoting any architectural work of art, whether orally, in writing or photographic form, which is exactly or substantially similar to La Resolana's architectural works of art or any structure which is exactly or substantially similar to La Resolana's architectural works of art which are the subject of the present case as shown in La Resolana's Complaint and

exhibits thereto, including those architectural works of art which are being used by the Remaining Defendants to promote the Country Club Villas subdivision in Angel Fire, New Mexico in violation of the United States copyright laws.  17 U.S.C. § 502.

48.    La Resolana is entitled to recover actual damages from the Remaining Defendants which it has sustained as a result of copyright infringement, and will continue to sustain as a result of the Remaining Defendants' wrongful acts, including any gains and profits from the sale of the copied works.  17 U.S.C. § 504(b).

49.    The Copyright Act authorizes the award of attorney's fees to the prevailing party in a suit under the Act. 17 U.S.C. § 505.

50.    Based on the Remaining Defendants' motivation and objective unreasonableness (both in the factual and the legal components of this case), and the need in particular circumstances to advance considerations of compensation and deterrence, the Court awards La Resolana attorney fees.  *See Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1200 (10th Cir. 2005).

51.    In light of the foregoing, and because La Resolana's copyright registration for La Resolana's Copyrighted Architectural Works is valid and enforceable, the Clay Defendants' Claim for Declaratory Judgment is denied.


II.    <u>*VIOLATION OF NEW MEXICO UNFAIR TRADE PRACTICES ACT*</u>

52.    To establish a violation of the New Mexico Unfair Trade Practices Act, the following four elements must be established:  (1)  the complaining party must show that the party charged made an "oral or written statement, visual description or other representation" that was either false or misleading; (2) the false or misleading representation must have

been "knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or ... collection of debts"; (3) the conduct complained of must have occurred in the regular course of the representer's trade or commerce; and (4) the representation must have been of the type that "may, tends to or does, deceive or mislead any person.". *Stevenson v. Louis Dreyfus Corp.*, 112 N.M. 97, 100, 811 P.2d 1308, 1311 (1991).

53.     Any party who suffers loss as a result of the violation of the New Mexico Unfair Trade Practices Act may bring an action to recover actual damages. N.M. STAT. ANN. § 57-12-10(B).

54.     The Remaining Defendants knowingly made oral and/or written statements concerning the townhomes built in the Community that were either false or misleading in connection with the sale, lease, or rental of townhomes in the Community. The Remaining Defendants' conduct occurred in the regular course of their trade or commerce, and their statements must have been of the type that "may, tends to or does, deceive or mislead any person."

55.     The Remaining Defendants violated the New Mexico Unfair Trade Practices Act, N.M. STAT. ANN. § 57-12-1 *et seq*., in that the Remaining Defendants are attempting to pass off La Resolana's Copyrighted Architectural Works as if they (the Remaining Defendants) were the original designers or creators of the artwork, in a manner calculated to deceive customers and other persons who view such artwork.

56.     The Remaining Defendants violated the New Mexico Unfair Trade Practices Act, N.M. STAT. ANN. § 57-12-1 *et seq*., in that the Remaining Defendants have failed to state material facts, which have deceived or tends to deceive the purchasing public.

57.  The Remaining Defendants violated the New Mexico Unfair Trade Practices Act, N.M. STAT. ANN. § 57-12-1 *et seq*., in that the Remaining Defendants have stated that transactions may involve rights, remedies or obligations that they do not involve.

58.  La Resolana has suffered actual damages caused by the Remaining Defendants' unfair or deceptive trade practices.

59.  Based upon their conduct, the Remaining Defendants have engaged in unconscionable trade practices under the New Mexico Unfair Trade Practices Act.  The Remaining Defendants' conduct has been malicious, fraudulent, in bad faith, willful, wanton, reckless or otherwise grossly negligent, entitling La Resolana to recover punitive damages from the Remaining Defendants.  Pursuant to N.M. STAT. ANN. § 57-12-10(B), La Resolana is entitled to recover three times its actual damages from the Remaining Defendants.

60.  Pursuant to N.M. STAT. ANN. § 57-12-10(C), La Resolana is entitled to recover its attorneys fees and costs from the Remaining Defendants.

61.  Pursuant to N.M. STAT. ANN. § 57-12-10, La Resolana is entitled to a permanent injunction restraining the Remaining Defendants, and any officers, directors, employees, agents, subsidiaries, distributors, dealers, contractors, subcontractors, licensees and any other persons in active concert or participation with any of them anywhere in the United States, is hereby preliminarily enjoined from using, copying, reproducing, packaging or repackaging, constructing, building, selling, adapting, publishing, offering for sale, advertising, distributing, marketing, telemarketing, advertising and/or placing advertising, leasing, transferring, displaying, developing, claiming ownership to and/or otherwise promoting any architectural work of art, whether orally, in writing or photographic form,

14

which is exactly or substantially similar to La Resolana's architectural works of art or any structure which is exactly or substantially similar to La Resolana's architectural works of art which are the subject of the present case as shown in La Resolana's Complaint and exhibits thereto, including those architectural works of art which are being used by the Remaining Defendants to promote the Country Club Villas subdivision in Angel Fire, New Mexico.

### III.      *UNFAIR COMPETITION – VIOLATION OF UNITED STATES LANHAM ACT*

62.   Section 43(a) of the Lanham Act states in part: "Any person who, on or in connection with goods or services .... uses in commerce any ... false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities ... of his or her or another person's goods, services or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1)(B).

63.   To establish a violation of Section 43(a) of the Lanham Act, La Resolana must establish that (1) its architectural designs are protectable, and (2) the Remaining Defendants' use of a similar design is likely to cause confusion among consumers.  *See e.g., Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1215 (10th Cir. 2004).

64.   Intent on the part of the alleged infringer to pass off its goods as the product of another raises an inference of a likelihood of confusion.  *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1135 (10th Cir. 2003)

65.   If a plaintiff claims that a defendant uses plaintiff's copyrighted work as their own, then a

claim under the Lanham Act survives. *Carroll v. Kahn*, 2003 WL 22327299 *5 - 6 (N.D.N.Y. 2003) ("*Dastar* makes clear that a claim that a defendant's failure to credit the plaintiff on the defendant's goods is actionable where the defendant repackages the plaintiff's goods and sells them as his own[.]").

66.   Through its copyright Certificate of Registration from the United States Copyright Office, La Resolana has established that its architectural designs are protectible.  The Remaining Defendants clearly knew of La Resolana's Copyrighted Architectural Works, yet with an infinite variety of non-similar townhome designs available for use in the Community, they chose a virtually identical design.  The Clay Defendants desired to pass La Resolana's work off as their own (or, repackage the works) without compensation to La Resolana. In doing so, the Remaining Defendants gained a number of significant benefits. The design was obviously a good one, or the Remaining Defendants would not have wanted to use it. The Remaining Defendants spent no time creating the design, but earned substantial revenues by using it.  Rather than pay fees to compensate a licensed architect, the Remaining Defendants paid a significantly lower fee to an unregistered draftsperson for the preparation of the original drawing, and only had to pay "copy charges" to obtain copies for each additional townhome built.  Moreover, the Remaining Defendants received the benefit of countless subcontractors' seeing La Resolana's work and believing that it was actually the work of either the Clay Defendants or Angel Fire Home Design. Any potential home-buyer who liked the townhomes in the Community would, upon searching the Village of Angel Fire's public records, be led to believe that the Clay Defendants or Angel Fire Home Design, and not La Resolana, was the designer who designed the home.  Here, the Remaining Defendants are deliberately passing off La

Resolana's product as their own. This variety of "deliberate theft of a marketholder's goodwill" is more egregious than ordinary passing off, as it involves actual theft.  This is an "exceptional  case" under the Lanham Act because the Remaining Defendants literally stole La Resolana's plans.  *See Johnson v. Jones*, 149 F.3d 494, 503-04 (6th Cir. 1998).

67.   The Remaining Defendants' actions violate Section 43(a) of the Lanham Act.  15 U.S.C. 1125(a).

68.   La Resolana is entitled to a permanent injunction restraining the Remaining Defendants, and any officers, directors, employees, agents, subsidiaries, distributors, dealers, contractors, subcontractors, licensees and any other persons in active concert or participation with any of them anywhere in the United States, is hereby preliminarily enjoined from using, copying, reproducing, packaging or repackaging, constructing, building, selling, adapting, publishing, offering for sale, advertising, distributing, marketing, telemarketing, advertising and/or placing advertising, leasing, transferring, displaying, developing, claiming ownership to and/or otherwise promoting any architectural work of art, whether orally, in writing or photographic form, which is exactly or substantially similar to La Resolana's architectural works of art or any structure which is exactly or substantially similar to La Resolana's architectural works of art which are the subject of the present case as shown in La Resolana's Complaint and exhibits thereto, including those architectural works of art which are being used by the Remaining Defendants to promote the Country Club Villas subdivision in Angel Fire, New Mexico in violation of the Lanham Act.

69.   Section 35(a) of the Lanham Act provides that, when a violation of § 43(a) has been established, the plaintiff shall be entitled to recover (1) the defendant's profits, (2)

damages sustained, and (3) costs of the action. 15 U.S.C. § 1117(a). Section 35(b) permits the district court to award treble damages in appropriate circumstances. *Id.* ("In assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee[.]").

70.    La Resolana is entitled to recover profits, damages sustained and costs from the Remaining Defendants pursuant to Section 35(a) of the Lanham Act.

71.    In light of the foregoing, the Remaining Defendants willfully and fraudulently intended to deceive the public concerning the origin of the goods. As such, this case is deemed "exceptional" as that term is used in Section 35 of the Lanham Act. *Western Diversified Services, Inc. v. Hyundai Motor America, Inc.*, 427 F.3d 1269, 1277 (10th Cir. 2005); 15 U.S.C. § 1117.

72.    Because the Court finds that the Remaining Defendants are willfully passing off La Resolana's Copyrighted Architectural Works as their own through the AFHD Drawings, the Court finds that such conduct was a deliberate theft of a La Resolana's intellectual property. *See Johnson v. Jones*, 149 F.3d 494, 503 (6th Cir. 1998).

73.    La Resolana is entitled to recover treble damages pursuant to Section 35(a) of the Lanham Act.  15 U.S.C. § 1117.

74.    The Court finds in favor of La Resolana and against the Remaining Defendants on all counts.

Dated this 30th day of May, 2006.

**SOUTHWEST INTELLECTUAL PROPERTY SVCS., LLC**

By: _Kevin Lynn Wildenstein_

Kevin Lynn Wildenstein
Counsel for Plaintiff
9400 Holly Ave. NE, Bldg. 4, Ste. H
Albuquerque, New Mexico  87122
Counsel for Plaintiff
(505) 944-2500
(505) 944-2501 (fax)

- and –

**MILLER STRATVERT PA**

By: _Kevin Lynn Wildenstein_

_for_ H. Brook Laskey
Gary Gordon
Miller Stratvert PA
PO Box 25687
Albuquerque, New Mexico  87125
(505) 842-1950

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing
document was transmitted by electronic mail to the following
counsel of record this 30th day of May, 2006:

Dewitt M. Morgan
Rodey, Dickason, Sloan, Akin & Robb
P.O. Box 1888
Albuquerque, New Mexico  87103
Atty for Lance Clay, Reno, Inc.
mmorgan@rodey.com

Randy S. Bartell, Esq.
Montgomery & Andrews
325 Paseo de Peralta
Santa Fe, New Mexico  87501
Atty for Angel Fire Home Design
rbartell@montand.com

Michael Plante
P.O. Box 67824
Albuquerque, New Mexico  87193-7824
Atty for Gary Plante, SW Invest. Trust LP
cmcllc@msn.com

**Southwest Intellectual Property Services, LLC**

By: __Electronically Served 5/30/06_____

PLAINTIFF'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW