**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LA RESOLANA ARCHITECTS, PA,
        a New Mexico Corporation,
                        Plaintiff,

v.                                                             Civ. No. 05-1017 PJK/RHS

RENO INC. dba CLAY REALTORS ANGEL FIRE,
        a New Mexico Corporation,
SOUTHWEST INVESTMENT TRUST, LP,
        a New Mexico Limited Partnership,
LANCE K. CLAY,
        an individual,
GARY PLANTE,
        an individual, and
ANGEL FIRE HOME DESIGN,
        a New Mexico Corporation,
                        Defendants,
*et al.*

**PLAINTIFF'S REVISED PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

By invitation from the Court on June 14, 2006, Plaintiff La Resolana Architects, PA ("La Resolana") hereby submits its revised proposed Findings of Fact and Conclusions of law following trial to the bench which occurred on June 12 - 14, 2006.

**REVISED PROPOSED FINDINGS OF FACT:**

1.      La Resolana is an architectural firm.  The President of La Resolana is Earl Hilchey, who is a licensed architect with the State of New Mexico.

2.      Through an assignment dated April 1, 1997 from Mr. Hilchey, La Resolana is the owner of U.S. Copyright Registration No. VA 1-257-022 titled "Angel Fire Project Floorplan 1" for architectural artwork of an elevation view and an interior floor plan ("La Resolana's Copyrighted Architectural Works").

3.      Co-defendant Gary Plante is the President and Managing Partner of co-defendant Southwest Investment Trust LP.  Southwest Investment Trust is the party who owns the subject land in Angel Fire, New Mexico.

4.      Co-defendant Lance Clay is a realtor in Angel Fire, New Mexico, and is the owner of co-defendant Reno Inc.

5.      In approximately December 1996, Mr. Plante and Mr. Clay met with Mr. Hilchey and Larry Jones at Preferred Building Systems in Albuquerque to discuss the development of multi-home residential units proposed to be built in a housing subdivision near Country Club Road in Angel Fire, New Mexico (the "Community").  The proposed subdivision was to consist primarily of patio homes and townhomes.

6.      During the meeting, Mr. Clay and Mr. Plante (individually and on behalf of Reno, Inc. and Southwest Investment Trust LP, respectively) requested Mr. Hilchey to design one or more residential unit architectural works which could be a basis for multiple residential units for the Angel Fire Community project, and further requested him to maximize the number of units that could be built for this project.

7.      Mr. Plante and Mr. Clay expressed their desire for each unit to have approximately two bedrooms, two baths, a single car garage and approximately 1200 square feet (heated space) in size.

8.      Multiple correspondence was sent by Mr. Hilchey to Mr. Plante by fax containing an evolution of interior floor plans, including the overall elevation design of a proposed structure, as well as the arrangement and composition of interior spaces and elements consistent with the elevation design.  *See e.g.,* 6/12/06 Tr. 52:1 – 89:16; 6/13/06 Tr. 573:3-10; 575:1 – 577:5; 6/14/06 Tr. 596:21 - 597:3; *see also* 6/12/06 Tr., Exs. 3, 4, 5, 8,

10, 11, 17, and 54.  These communications were sent on January 10, 1997, January 15, 1997, January 16, 1997, and January 23, 1997.  Mr. Hilchey sent most of the faxes to the Lamb, Metzger, Lines and Dahl law firm, who represented both Mr. Plante and Southwest Investment Trust LP.  *See e.g.*, 6/12/06 Tr., 52:8 - 53:5 and Ex. 22.  Other faxes were sent directly to Mr. Clay and/or Mr. Behles.

9.      Multiple correspondence was also sent by Mr. Hilchey to Mr. Plante by fax containing a proposed site development plan having thirty-eight (38) units, with each unit having a zero lot line adjacent to another unit, so that in total, there were nineteen (19) structures. This correspondence was sent by fax on January 20, 1997, January 24, 1997, February 4, 1997, and March 27, 1997.

10.     Unbeknown to Mr. Hilchey, and only six days after Mr. Hilchey sent Mr. Plante a proposed site development plan containing nineteen (19) structures and a zero lot line on January 22, 1997, Mr. Clay submitted a site development plan to the Village of Angel Fire Planning and Zoning Commission on January 30, 1997.  According to the meeting minutes, Mr. Clay's proposed site development plan contained 19 structures having a zero lot line.  *See* 6/12/06 Tr., Ex. 12.

11.     Mr. Clay sent correspondence to Mr. Hilchey regarding the preparation of a site development plan in the Community, including sometime prior to January 20, 1997 and on March 11, 1997.

12.     At some point between February 4, and March 27, 1997, Mr. Hilchey authored an interior floor plan and a front side elevation architectural drawing which are the subject of La Resolana's Copyrighted Architectural Works.  These architectural designs clearly state: "COPYRIGHT 1997, EARL W. HILCHEY, ARCHITECT".  *See* e.g., 6/12/06 Tr., Ex. 1.

13.    Shortly after Mr. Hilchey received the March 27, 1997 fax from Mr. Clay regarding a
       revised site development plan, Mr. Plante called Mr. Hilchey to inform him the Village of
       Angel Fire was getting ready to approve the development and that Mr. Hilchey should
       call Mr. Clay and discuss the preparation of full construction architectural drawings.  Mr.
       Hilchey attempted numerous times to contact Mr. Clay, but Mr. Clay never returned Mr.
       Hilchey's phone calls.  6/12/06 Tr., 108:19 – 109:9.

14.    On April 28, 1997, Mr. Hilchey sent a fax to Mr. Jones of Preferred Building Systems,
       providing a copy of La Resolana's Copyrighted Architectural Works so that Mr. Jones
       could prepare a quote for the project on behalf of Preferred Building Systems. Mr. Jones
       then provided the quote for the project to Mr. Plante, along with a copy of the exterior
       facade and the interior floor plan.  Mr. Plante admits he received a quote for the project
       from Mr. Jones.  *See* 6/14/06 Tr. 880:17 – 881:9.

15.    From April 1998 to May 29, 1998, Mr. Hilchey left numerous voice messages for Mr.
       Clay and Mr. Plante to discuss the project. Neither Mr. Clay nor Mr. Plante returned any
       of Mr. Hilchey's messages.  As such, on May 29, 1998, Mr. Hilchey notified Mr. Plante
       and Mr. Clay by letter of La Resolana's copyright rights to the subject architectural
       artwork, and concluded that if Mr. Plante and Mr. Clay wanted to use the subject artwork,
       "we need to negoitate [sic] a fair compensation".  This letter was sent to Mr. Plante's
       business office (and the address of Southwest Investment Trust LP) located on 300
       Central Ave. SW, Albuquerque, NM 87102.  *See* 6/12/06 Tr. 110:25 – 112:3.  Neither
       Mr. Plante nor Mr. Clay responded to this letter.  *See* 6/12/06 Tr. 112:16-18.

16.    In September 1998, twenty months after Mr. Hilchey authored La Resolana's
       Copyrighted Architectural Works, co-defendant Angel Fire Home Design prepared the

4

first set of construction drawings upon the direction of Lance Clay (the "AFHD Drawings").

17.   Mr. Clay and/or Reno Inc. has publicly advertised in New Mexico and in interstate commerce that the townhomes in the Community are owned by Reno Inc.  *See* 6/14/06 Tr. 563:19 - 566:20; 566:17-20, Ex. 29.

18.   In approximately October 2003, Mr. Hilchey was in Angel Fire on another architectural project.  Wondering what happened to the project in the Community, Mr. Hilchey drove by the Community and discovered that La Resolana's Copyrighted Architectural Works were being built as residential structures in the Community.  *See* 6/12/06 Tr., 113:6-24.


**REVISED PROPOSED CONCLUSIONS OF LAW:**

19.   Venue is properly laid in this District.

20.   The District of New Mexico has jurisdiction over the parties in this case.


I.      *INFRINGEMENT - UNITED STATES COPYRIGHT ACT*

21.   Under the United States Copyright Act, a copyright is the exclusive right to copy. This right to copy includes the exclusive rights to reproduce the copyrighted work, prepare derivative works based upon the copyrighted work, distribute copies of the copyrighted work to the public, and publicly display a copyrighted work.  It is the owner of a copyright who may exercise these exclusive rights to copy.  The term "owner" includes an assignee.  17 U.S.C. § 101 *et seq.*

22.   Architectural works are protected by the Copyright Act.  17 U.S.C. § 102(a)(8).  The Copyright Act defines an "architectural work" as "the design of a building as embodied

5

in any tangible medium of expression, including a building, architectural plans, or drawings." 17 U.S.C. § 101. The copyright right in the architectural work includes the overall form of the architectural design as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features or design elements that are functionally required. *See e.g.,* U.S. Copyright Office Circular 41, "Copyright Claims in Architectural Works".

23. The Copyright Act defines a derivative work as "a work based upon one or more preexisting works[.]" 17 U.S.C. § 101.

24. The Copyright Act protection does not ""extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b).

25. Copyright law prohibits the reproduction or unauthorized use of substantially similar copies of the owner's copyrighted work without the owner's permission. An owner may enforce the rights to exclude others in an action for copyright infringement. Even though one may acquire a copy of the copyrighted work, the copyright owner retains rights and control of that copy, including uses that may result in additional copies or alterations of the work. 17 U.S.C. § 101 *et seq.*

26. One who reproduces, prepares derivative works from or distributes a copyrighted work without authority from the copyright owner during the term of the copyright, infringes the copyright. 17 U.S.C. § 101 *et seq.*

27. To prove that Mr. Clay, Reno Inc., Mr. Plante and/or Southwest Investment Trust LP (the

"Remaining Defendants[1]") infringed La Resolana's Copyrighted Architectural Works, La Resolana must prove (1) ownership of a valid copyright and (2) unauthorized copying of constituent elements of the work that are original. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 942 (10th Cir. 2002). In order to prove copying of legally protectible material, a plaintiff must typically show substantial similarity between legally protectible elements of the original work and the allegedly infringing work. *Id.* at 936. To decide whether two works are substantially similar, a Court asks "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value." *Jacobsen*, 287 F.3d at 942-943.

28. The Remaining Defendants allege that a sketch created by Lance Clay was given to Mr. Hilchey at the December 1996 meeting, and that this same exact sketch was recreated twenty months later for Angel Fire Home Design, however, no objective evidence exists to support these allegations. At trial, there was no evidence that Lance Clay owns any copyrighted architectural drawings covering the structures built in the Community. Further, there was no evidence adduced at trial to show that La Resolana's architectural works were not sufficiently original, unique or creative for protection under the Copyright Act. In contrast, La Resolana's Certificate of Registration covering the subject architectural works was adduced at trial, along with evidence that Mr. Hilchey independently created the unique architectural works, placed a visible copyright notice on his architectural drawings (e.g., "COPYRIGHT 1997 EARL W. HILCHEY,

---

[1] Defendant Angel Fire Home Designs has settled this lawsuit with La Resolana during a Settlement Conference held on May 22, 2006, and will be dismissed from this case upon the execution of a settlement agreement. As such, the phrase "Remaining Defendants" is used to identify the parties remaining in this lawsuit.

PLAINTIFF'S REVISED PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW

ARCHITECT"), and subsequently transferred his personal copyright rights to the subject architectural works to La Resolana.  As such, La Resolana has made a prima facie case of copyright ownership of the subject architectural works.

29.   The Defendants claim that La Resolana committed fraud upon the U.S. Copyright Office when Mr. Hilchey applied for a Certificate of Registration for architectural drawings.  In order to sustain a claim of fraud on the Copyright Office, the Defendants must show that La Resolana "knowingly failed to advise the Copyright Office of facts which might have led to rejection of the registration application" which is "likely to affect the Register's decision only if it concerns the copyrightability of the work."  *E.E.O.C. v. Vanguard Group, Inc.*, 2006 WL 931613 *3 (slip op. E.D. Pa. 2006) *citing Gallup, Inc. v. Kenexa Corp.*, 149 Fed. Appx. 94, 96 (3d Cir. 2005) (an otherwise valid registration is not jeopardized by inadvertent, immaterial errors in an application); *see also Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F.Supp. 980, 988 (S.D.N.Y.1980) (a presumption of validity exists for copyright registrations due to the judicial deference given to the U.S. Copyright Office); *Whimsicality, Inc. v. Rubie's Costume Co.*, 891 F.2d 452, 455 (2d Cir. 1989) ("Misstatements on a Certificate application will not overcome a copyright's presumption of validity unless the misstatements were deliberate.").  At trial, the Defendants did not adduce any evidence that either Mr. Hilchey or La Resolana intentionally misstated facts in its copyright application which would constitute a reason for the Copyright Office to reject the application.  As such this defense is rejected.

30.   "On access, a plaintiff may meet his initial burden by showing that the defendant had a "reasonable opportunity to view" or "opportunity to copy" the allegedly infringed work.  *Id.* (citations omitted).  *Id.*; *see also Robert R. Jones Assocs., Inc. v. Nino Homes*, 858

F.2d 274, 277 (6th Cir.1988) ("[a]ccess merely means an opportunity to view the protected material"); *Kamar Int'l, Inc. v. Russ Berrie & Co.*, 657 F.2d 1059 (9th Cir.1981) (access shown by dealings between the parties and the third party on a chain of events theory relating to the same subject matter). When a plaintiff proves that the alleged infringer has had an opportunity to view the copyrighted work, the burden shifts to the defendant to prove that access did not exist. *Autoskill Inc. v. National Educational Support Systems, Inc.*, 994 F.2d 1476, 1490 (10th Cir. 1993).

31.    When the two works are so strikingly similar, the copyright owner has a significantly lower burden of establishing "access". *See Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 56 (2d Cir. 2003) ("There is an inverse relationship between access and probative similarity such that the stronger the proof of similarity, the less the proof of access is required."); *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 372 n.10 (5th Cir. 2004) ("a plaintiff may establish factual copying without any proof of access when the similarity between plaintiff's and defendant's works is sufficiently striking such that the trier of fact may be permitted to infer copying on that basis alone.") (citation omitted); *see also* 4 Nimmer § 13.03[D], at 13-79 ("[T]he stronger the proof of similarity, the less the proof of access that is required.").

32.    The Remaining Defendants had access to La Resolana's work in light of their on-going communications with Mr. Hilchey and Larry Jones. *See e.g.,* 6/12/06 Tr. 52:1 – 89:16; 6/13/06 Tr. 573:3-10; 575:1 – 577:5; 6/14/06 Tr. 596:21 - 597:3. While the Defendants deny receiving any type of communication from Mr. Hilchey, there is substantial evidence to refute such denials, including:

   ▪    the business address of Southwest Investment Trust LP is the same address as

the Lamb Metzger law firm, counsel to Mr. Plante and Southwest Investment Trust (6/14/06 Tr., *pp*. 866:11- 867:4);

▪ the fax number to which Mr. Hilchey transmitted his drawings to Mr. Plante is the same fax number of Jeffrey Dahl, a partner in the Lamb Metzger law firm, and Mr. Plante's and Southwest Investment Trust's legal counsel (6/12/06 Tr., Ex. 22);

▪ the May 29, 1997 letter sent by Mr. Hilchey to Mr. Plante asking for compensation if the defendants used his plans is addressed to the Lamb Metzger law firm address  (6/12/06 Tr., Ex. 21);

▪ despite Mr. Plante's allegations that he had nothing to do with the development of the Community, he provided Earl Hilchey with Exhibits 6A and 6B, containing his handwritten notes of Lance Clay's phone number, along with notes concerning sewer, water, power, telephone, zero lot lines, a 1200 heated square foot townhome and a 200 square foot garage and the exact square footage for the overall land size of the Community lot.  6/14/06 Tr., *pp*. 875:3- 878:3;

▪ while the Clay Defendants deny any significant communication with Mr. Hilchey, Lance Clay admitted sending Mr. Hilchey documents seeking Mr. Hilchey's assistance with the project in the Community (6/13/06 Tr. 576:19 - 577:5 and Ex. 16), even referencing Mr. Hilchey on a first name basis as "Earl", indicating "We are still trying to get at least 32 units in here.  Don't know if it is possible." and concluding by wishing Mr. Hilchey "Good Luck, Lance".  6/13/06 Tr. 585:16-19 and Ex. 16.  Mr. Clay testified that he sent correspondence to Mr. Hilchey in order to get Mr. Hilchey to draw the site development plan in order to maximize the number of structures that could be built in the Community.  6/13/06 Tr., 576:19:23.

▪ Mr. Plante admits receiving a quote from Larry Jones of Preferred Building Systems concerning the Community project (6/14/06 Tr., *p*. 881:4), and testified that upon receipt of the quote, it was "Lance's responsibility". (6/14/06 Tr., *p*. 885:5-6).

In light of such continuous communications between Mr. Hilchey and one or more of the

Defendants concerning development of the Community from between late 1996 to mid-

1997, Mr. Plante, in conjunction with Southwest Investment Trust, had a reasonable

opportunity to view and copy La Resolana's Copyrighted Architectural Work.  Mr. Plante

then likely transmitted the architectural designs and price quotes to Mr. Clay and/or Reno

Inc. for their use as the basis for the derivative AFHD Drawings some twenty months later, so that the Clay Defendants had a reasonable opportunity to copy La Resolana's drawings.  La Resolana has established access.

33.   Pursuant to *Jacobsen*, 287 F.3d at 942-943, the Court finds that, upon ordinary review of La Resolana's Copyrighted Architectural Works and the AFHD Drawings, the AFHD Drawings are strikingly, if not substantially, similar to La Resolana's Copyrighted Architectural Works.  *See Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.*, 361 F.3d 312, 317 (6th Cir. 2004) ("The traditional approach is the 'ordinary observer' or 'audience' test, which requires the trier of fact to gauge the similarities of the two works solely on the basis of his 'net impression' and without relying on expert analysis or dissection.'").  In the words of Judge Learned Hand, two works are substantially similar if "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same."  *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960).   For example, the following similarities are observed:  the front elevation (or, front facade) of each drawing are almost identical with regard to the overall form, the massing, as well as the arrangement and composition of spaces and elements (*e.g.*, the garage locations are the same, the major dormer locations are the same, the minor dormer locations are the same including two roof dormers on the left and right sides, the window locations are the same, the roof location and arrangements are the same).  Even the type of exterior treatment used on both drawings (*e.g.*, stippling to depict stucco, wood, metal roof) are the same and in the same locations.  With regard to the interior plant, minor differences exist, yet such differences are trivial because the location of the major exterior and

interior structural walls are exactly the same, as well as the primary and secondary living spaces, and also including all entry and exit points to the outside area. And, while the Defendants design is slightly larger than La Resolana's design, it is common sense that by merely adding a rear sunroom and a mid-way hall to La Resolana's design, a larger square footage is achieved. Despite a number of other architectural designs which would comport with the Defendants' desires and the land restrictions set by the Village of Angel Fire, and despite the unlimited number of ways to use different massings, dormers, window locations, exterior treatments, and positioning of exterior and interior spaces, the Defendants used La Resolana's subject architectural works as the foundational basis for their architectural works and resulting structures in the Community.

34.     In making the determination that La Resolana's Copyrighted Architectural Works and the AFHD Drawings are substantially similar, the Court is acting as an "ordinary observer", and has given no weight to the expert testimony adduced at trial. *Tiseo Architects, Inc. v. SSOE Inc.*, 2006 WL 1235164 *4 (E.D. Mich. 2006) ("expert testimony is not required where the target audience is a lay one."); *see also Rottlund Comp. Inc. v. Pinnacle Corp.*, --- F.3d ----, 2006 WL 1676883 *3-4 (8th Cir. 2006) (expert testimony is inadmissible to "establish or rebut direct evidence of copying or independent creation"; rather, "substantial similarity of expression is measured by the response of the ordinary, reasonable person to the forms of expression.").

35.     The Defendants identify several "differences" between La Resolana's Copyrighted Architectural Works and the AFHD Drawings. However, the "existence of differences will not negate infringement unless they so outweigh similarities that the similarities can only be deemed inconsequential within the total context of [the copyrighted] work."

*CSM Investors, Inc. v. Everest Development, Ltd.*, 840 F.Supp. 1304, 1312 (D. Minn. 1994) (citations omitted).  In this case, the "differences" identified by the Defendants are trivial, or otherwise, are deemed a natural evolution of architectural design which were originally based upon La Resolana's Copyrighted Architectural Works.

36.    Because La Resolana's architectural works are so strikingly similar to the Defendants' designs, La Resolana also has a significantly lower burden of establishing "access".  *See Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 56 (2d Cir. 2003) ("There is an inverse relationship between access and probative similarity such that the stronger the proof of similarity, the less the proof of access is required."); *Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 372 n.10 (5th Cir. 2004) ("a plaintiff may establish factual copying without any proof of access when the similarity between plaintiff's and defendant's works is sufficiently striking such that the trier of fact may be permitted to infer copying on that basis alone.") (citation omitted); *see also* 4 Nimmer § 13.03[D], at 13-79 ("[T]he stronger the proof of similarity, the less the proof of access that is required.").  Thus, while no direct evidence of access was adduced at trial, the striking similarity between La Resolana's Copyrighted Architectural Works and the AFHD Drawings establish that the Defendants copied La Resolana's architectural works.

37.    Moreover, because the two works of art are so strikingly similar, the Defendants' defense of "independent creation" must be rejected.  *See Susan Wakeen Doll Co., Inc. v. Ashton Drake Galleries*, 272 F.3d 441, 450 (7th Cir. 2001) ("a strong showing of substantial similarity can operate to infer that the defendant had access to the plaintiff's work and that the defendant copied the plaintiff's work rather than independently created its own work."); *see also Murray Hill Publications, Inc. v. Twentieth Century Fox Film Corp.*,

361 F.3d 312, 317 (6th Cir. 2004) ("The quantum of similarity that will substitute for proof of access is "striking similarity." Such striking similarity "preclude[s] the possibility of independent creation. ... striking similarity carries the burdens of proof that the infringing work is sufficient similar as to intrude into the copyrighted work's protection and that the defendant must have had access to the copyrighted work, even if the plaintiff can provide no extrinsic proof of that fact.") (citations omitted); *see also Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 486 (9th Cir. 2000) (substantial evidence of copying based on access and substantial similarity is sufficient to reject a defense of independent creation); *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1249 (11th Cir. 1999).

38.    Because the Remaining Defendants had access to La Resolana's Copyrighted Architectural Works, and subsequently used such works as the foundation to create the substantially similar AFHD Drawings as derivative works, the Remaining Defendants directly, contributorily or vicariously, copied and used La Resolana's Copyrighted Architectural Works in its entirety or substantially in its entirety for the specific purpose of infringing La Resolana's copyright rights without compensation to La Resolana, all to the benefit of the Remaining Defendants and to the detriment of La Resolana.  17 U.S.C. § 501.

39.    The Clay Defendants have directly infringed and will continue to infringe La Resolana's Copyrighted Architectural Works by their continued use and reproduction of the architectural artwork(s) for the Community, which are based upon, or are direct copies or substantially similar copies of, La Resolana's Copyrighted Architectural Works in violation of the United States Copyright Act.

40.     A party may be liable for contributory copyright infringement if the party induces, causes or materially contributes to the infringing conduct of another with knowledge. *Irwin v. ZDF Enterprises GMBH*, 2006 WL 374960, *4 n. 3 (S.D.N.Y. 2006).  A party may be held vicariously liable for copyright infringement by another if the party has a financial interest and the right and ability to supervise the infringing activity, whether or not the person knew of the infringement.  *See e.g. Irwin v. ZDF Enterprises GMBH*, 2006 WL 374960, *4 n. 3 (S.D.N.Y. 2006).

41.     Under the direction and control of Mr. Plante, Southwest Investment Trust LP has sold to the Clay Defendants numerous real property lots upon which buildings based upon La Resolana's Copyrighted Architectural Works were built.  Southwest Investment Trust LP received from Clay Realty at least $12,500 per townhome sold.  As such, Southwest Investment Trust LP and Mr. Plante have benefited, and continue to benefit, from the sales of buildings which are based upon La Resolana's Copyrighted Architectural Works.

42.     Through their conduct as identified *supra*, the Plante Defendants were the main facilitator and conduit between Mr. Hilchey and the Clay Defendants.  As such, the Plante Defendants have contributorily infringed, and will continue to contributorily infringe, La Resolana's Copyrighted Architectural Works by their knowledge of La Resolana's Copyrighted Architectural Works, their participation in on-going discussions with Mr. Hilchey concerning the subject architectural works, and their material contributions to the Clay Defendants' direct infringement with the knowledge of La Resolana's claim of ownership of La Resolana's Copyrighted Architectural Works.

43.     A party may be held vicariously liable for copyright infringement by another if the party has a financial interest and the right and ability to supervise the infringing activity,

whether or not the person knew of the infringement.  *See e.g. Irwin v. ZDF Enterprises GMBH*, 2006 WL 374960, *4 n. 3 (S.D.N.Y. 2006).

44.    Through their conduct as identified *supra*, the Plante Defendants were the main facilitator and conduit of communications between Mr. Hilchey and the Clay Defendants.  The Plante Defendants had every reason to aid, encourage and facilitate the infringement, and had every right and ability to control (and, in fact, did control) the communication flow between Mr. Hilchey and the Clay Defendants, so that the Plante Defendants' conduct materially contributed to the copyright infringement.  As such, the Plante Defendants have vicariously infringed, and will continue to vicariously infringe, La Resolana's Copyrighted Architectural Works by their knowledge of La Resolana's Copyrighted Architectural Works, their participation in on-going discussions with Mr. Hilchey concerning the subject architectural works, and their material contributions to the Clay Defendants' direct infringement with the knowledge of La Resolana's claim of ownership of La Resolana's Copyrighted Architectural Works.

45.    While the Plante Defendants argue that they had no knowledge that the Clay Defendants would later copy La Resolana's architectural drawings, the Plante Defendants cannot escape liability merely by choosing during litigation "not to know of any specific copyright infringement", especially when the Plante Defendants' conduct facilitated the infringements.  *See Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F.3d 199, 204 (4th Cir. 1997);  *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 125 S.Ct. 2764, 2776 (2005) (vicarious infringement exists "by profiting from direct infringement while declining to exercise a right to stop or limit it"); *see also In re Aimster Copyright Litigation,* 334 F.3d 643, 650 (7th Cir. 2003).

46.   Through their conduct, the Plante Defendants have indirectly infringed and will continue to indirectly infringe La Resolana's Copyrighted Architectural Works because the Plante Defendants had the right and ability to supervise the communication flow between Mr. Hilchey and the Clay Defendants, and further, because the Plante Defendants had the right and ability to supervise the Clay Defendants' use of the land within the Community, and have an obvious and direct financial interest in the exploitation of copyrighted materials when townhomes based upon La Resolana's Copyrighted Architectural Works are sold in the Community.

47.   The Remaining Defendants are jointly and severally liable as copyright infringers.  *See Nelson-Salabes,* 284 F.3d at 517 ("When a court finds the existence of a partnership or a 'practical partnership,' the 'partners' thereof are jointly and severally liable for any profits that they collectively derived from the acts of copyright infringement."); *Sygma Photo News, Inc. v. High Soc. Magazine, Inc.*, 778 F.2d 89, 92 (2d Cir. 1985) ("All persons and corporations who participate in, exercise control over or benefit from an infringement are jointly and severally liable as copyright infringers."); *Cooper v. Sony Music Entertainment, Inc.*, 2002 U.S. Dist. LEXIS 16038, at *11 (S.D. Tex. 2002).

48.   La Resolana's injuries are a direct or indirect result of the Remaining Defendants' actions committed during the course of creating and developing structural townhomes in the Community.

49.   The Court hereby grants La Resolana's Motion for Preliminary Injunction as against the Remaining Defendants. [Court Docket Nos. 35, 39, 48, 57 and 67]

50.   La Resolana is entitled to a permanent injunction restraining the Remaining Defendants, and any officers, directors, employees, agents, subsidiaries, distributors, dealers,

contractors, subcontractors, licensees and any other persons in active concert or participation with any of them anywhere in the United States, is hereby preliminarily enjoined from using, copying, reproducing, packaging or repackaging, constructing, building, selling, adapting, publishing, offering for sale, advertising, distributing, marketing, telemarketing, advertising and/or placing advertising, leasing, transferring, displaying, developing, claiming ownership to and/or otherwise promoting any architectural work of art, whether orally, in writing or photographic form, which is exactly or substantially similar to La Resolana's architectural works of art or any structure which is exactly or substantially similar to La Resolana's architectural works of art which are the subject of the present case as shown in La Resolana's Complaint and exhibits thereto, including those architectural works of art which are being used by the Remaining Defendants to promote the Country Club Villas subdivision in Angel Fire, New Mexico in violation of the United States copyright laws.  17 U.S.C. § 502.

51.   La Resolana is entitled to recover actual damages from the Remaining Defendants which it has sustained as a result of copyright infringement, and will continue to sustain as a result of the Remaining Defendants' wrongful acts, including any gains and profits from the sale of the copied works.  17 U.S.C. § 504(b).

52.   The Copyright Act authorizes the award of attorney's fees to the prevailing party in a suit under the Act. 17 U.S.C. § 505.

53.   Based on the Remaining Defendants' motivation and objective unreasonableness (both in the factual and the legal components of this case), and the need in particular circumstances to advance considerations of compensation and deterrence, the Court awards La Resolana attorney fees. *See Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398

F.3d 1193, 1200 (10th Cir. 2005).

54.    In light of the foregoing, and because La Resolana's copyright registration for La
       Resolana's Copyrighted Architectural Works is valid and enforceable, the Clay
       Defendants' counterclaim for declaratory judgment is denied.


       II.    _VIOLATION OF NEW MEXICO UNFAIR TRADE PRACTICES ACT_

55.    To establish a violation of the New Mexico Unfair Trade Practices Act, the following
       four elements must be established:  (1)  the complaining party must show that the party
       charged made an "oral or written statement, visual description or other representation"
       that was either false or misleading; (2) the false or misleading representation must have
       been "knowingly made in connection with the sale, lease, rental or loan of goods or
       services in the extension of credit or ... collection of debts"; (3) the conduct complained
       of must have occurred in the regular course of the represener's trade or commerce; and
       (4)  the representation must have been of the type that "may, tends to or does, deceive or
       mislead any person.".  _Stevenson v. Louis Dreyfus Corp._, 112 N.M. 97, 100, 811 P.2d
       1308, 1311 (1991).

56.    Any party who suffers loss as a result of the violation of the New Mexico Unfair Trade
       Practices Act may bring an action to recover actual damages.  N.M. STAT. ANN. § 57-12-
       10(B).

57.    It was adduced at trial that the Clay Defendants made "false or misleading
       representations" when they advertised goods (townhomes) and their corresponding
       structural designs as being owned by the Clay Defendants, when in fact they were not.
       As indicated _supra_, the Clay Defendants had on-going communications with Mr. Hilchey

either through the Plante Defendants and directly with Mr. Hilchey concerning potential site development plans and architectural designs.  Subsequently, the Clay Defendants promoted the townhomes in interstate commerce (as exemplified in Exhibit 29, Clay Realtors' promotional advertisement of the Community stating "Are you ready for winter?  If you own one of **our Patio Homes**, the answer is YES!") to potential purchasers of townhomes in order to entice them to purchase the townhome.  *See* 6/14/06 Tr. 563:19 - 566:20; 566:17-20.  While no purchaser testimony was adduced at trial, it was not needed because actual deception of a consumer is not required under the New Mexico Unfair Practices Act.

58.     The Remaining Defendants knowingly made oral and/or written statements concerning the townhomes built in the Community that were either false or misleading in connection with the sale, lease, or rental of townhomes in the Community.  The Remaining Defendants' conduct occurred in the regular course of their trade or commerce, and their statements must have been of the type that "may, tends to or does, deceive or mislead any person."

59.     The Remaining Defendants violated the New Mexico Unfair Trade Practices Act, N.M. STAT. ANN. § 57-12-1 *et seq*., in that the Remaining Defendants are attempting to pass off La Resolana's Copyrighted Architectural Works as if they (the Remaining Defendants) were the original designers or creators of the artwork, in a manner calculated to deceive customers and other persons who view such artwork. *See e.g.,* 6/14/06 Tr. 563:19 - 566:20; 566:17-20 and Ex. 29.

60.     The Remaining Defendants violated the New Mexico Unfair Trade Practices Act, N.M. STAT. ANN. § 57-12-1 *et seq*., in that the Remaining Defendants have failed to state

material facts, which have deceived or tends to deceive the purchasing public.

61.     The Remaining Defendants violated the New Mexico Unfair Trade Practices Act, N.M. STAT. ANN. § 57-12-1 *et seq.*, in that the Remaining Defendants have stated that transactions may involve rights, remedies or obligations that they do not involve.

62.     The Remaining Defendants are jointly and severally liable. *See In re Consolidated Vista Hills Retaining Wall Litigation*, 893 P.2d 438, 552 (N.M. 1995).

63.     La Resolana has suffered actual damages caused by the Remaining Defendants' unfair or deceptive trade practices.

64.     Based upon their conduct, the Remaining Defendants have engaged in unconscionable trade practices under the New Mexico Unfair Trade Practices Act.   The Remaining Defendants' conduct has been malicious, fraudulent, in bad faith, willful, wanton, reckless or otherwise grossly negligent, entitling La Resolana to recover punitive damages from the Remaining Defendants.  Pursuant to N.M. STAT. ANN. § 57-12-10(B), La Resolana is entitled to recover three times its actual damages from the Remaining Defendants.

65.     Pursuant to N.M. STAT. ANN. § 57-12-10(C), La Resolana is entitled to recover its attorneys fees and costs from the Remaining Defendants.

66.     Pursuant to N.M. STAT. ANN. § 57-12-10, La Resolana is entitled to a permanent injunction restraining the Remaining Defendants, and any officers, directors, employees, agents, subsidiaries, distributors, dealers, contractors, subcontractors, licensees and any other persons in active concert or participation with any of them anywhere in the United States, is hereby preliminarily enjoined from using, copying, reproducing, packaging or repackaging, constructing, building, selling, adapting, publishing, offering for sale,

advertising, distributing, marketing, telemarketing, advertising and/or placing advertising, leasing, transferring, displaying, developing, claiming ownership to and/or otherwise promoting any architectural work of art, whether orally, in writing or photographic form, which is exactly or substantially similar to La Resolana's architectural works of art or any structure which is exactly or substantially similar to La Resolana's architectural works of art which are the subject of the present case as shown in La Resolana's Complaint and exhibits thereto, including those architectural works of art which are being used by the Remaining Defendants to promote the Country Club Villas subdivision in Angel Fire, New Mexico.

### III.   *UNFAIR COMPETITION – VIOLATION OF UNITED STATES LANHAM ACT*

67.   Section 43(a) of the Lanham Act states in part: "Any person who, on or in connection with goods or services .... uses in commerce any ... false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which in commercial advertising or promotion, misrepresents the nature, characteristics, qualities ... of his or her or another person's goods, services or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1)(B).

68.   To establish a violation of Section 43(a) of the Lanham Act, La Resolana must establish that: (1) that defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a) the origin, association or approval of the product with or by another, or (b) the characteristics of the

goods or services; and (4) [injury to] the plaintiff.  *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir.1999) (internal citations omitted); *accord Proctor & Gamble Co. v. Haugen*, 222 F.3d 1262, 1273-74 (10th Cir.2000).  Proof that consumers have actually been confused is not necessary to prove a violation of Section 43(a).  *Web Printing Controls, Co. v. Oxy-Dry Corp.*, 906 F.2d 1202 (7th Cir. 1990).

69.    Intent on the part of the alleged infringer to pass off its goods as the product of another raises an inference of a likelihood of confusion.  *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1135 (10th Cir. 2003).

70.    If a plaintiff claims that a defendant uses plaintiff's copyrighted work as their own, then a claim under the Lanham Act survives.  *Carroll v. Kahn*, 2003 WL 22327299 *5 - 6 (N.D.N.Y. 2003) ("*Dastar* makes clear that a claim that a defendant's failure to credit the plaintiff on the defendant's goods is actionable where the defendant repackages the plaintiff's goods and sells them as his own[.]"); *see also Tiseo Architects, Inc. v. SSOE Inc.*, 2006 WL 1235164 *4 (E.D. Mich. 2006).

71.    Through its copyright Certificate of Registration from the United States Copyright Office, La Resolana has established that its architectural designs are valid and protectible. The Remaining Defendants knew of La Resolana's Copyrighted Architectural Works, yet with an infinite variety of non-similar townhome designs available for use in the Community, they chose a virtually identical design.  The Clay Defendants desired to pass La Resolana's work off as their own (or, repackage the works with trivial modifications) without compensation to La Resolana. In doing so, the Remaining Defendants gained a number of significant benefits. The design was obviously a good one, or the Remaining Defendants would not have wanted to use it. The Remaining Defendants spent no time

23

creating the design, but earned substantial revenues by using it.  Rather than pay fees to compensate a licensed architect, the Remaining Defendants paid a significantly lower fee to an unregistered draftsperson for the preparation of the original drawing, and only had to pay "copy charges" to obtain copies for each additional townhome built.  Moreover, the Remaining Defendants received the benefit of countless subcontractors' seeing La Resolana's work and believing that it was actually the work of either the Clay Defendants or Angel Fire Home Design. Any potential home-buyer who liked the townhomes in the Community would, upon searching the Village of Angel Fire's public records, be led to believe that the Clay Defendants or Angel Fire Home Design, and not La Resolana, was the designer who designed the home.  Here, the Remaining Defendants are deliberately passing off La Resolana's product as their own. This variety of "deliberate theft of a marketholder's goodwill" is more egregious than ordinary passing off, as it involves actual theft.  This is an "exceptional  case" under the Lanham Act because the Remaining Defendants literally stole La Resolana's plans.  *See Johnson v. Jones*, 149 F.3d 494, 503-04 (6th Cir. 1998).

72.    The Remaining Defendants' actions violate Section 43(a) of the Lanham Act.  15 U.S.C. 1125(a).

73.    The Plante Defendants are also liable as contributory infringers under Section 43(a), because the Plante Defendants knew or should have known of the Clay Defendants' infringing use of La Resolana's Copyrighted Architectural Drawings.  *See Lockheed Martin Corp. v. Network Solutions, Inc.*, 44 U.S.P.Q.2d 1521 (C.D. Cal. 1997); *see e.g., Gillette Co. v. Wilkinson Sword, Inc.*, 795 F.Supp. 662, 664 (S.D.N.Y. 1992) (joint and several liability under Section 43(a)).

74.     La Resolana is entitled to a permanent injunction restraining the Remaining Defendants, and any officers, directors, employees, agents, subsidiaries, distributors, dealers, contractors, subcontractors, licensees and any other persons in active concert or participation with any of them anywhere in the United States, is hereby preliminarily enjoined from using, copying, reproducing, packaging or repackaging, constructing, building, selling, adapting, publishing, offering for sale, advertising, distributing, marketing, telemarketing, advertising and/or placing advertising, leasing, transferring, displaying, developing, claiming ownership to and/or otherwise promoting any architectural work of art, whether orally, in writing or photographic form, which is exactly or substantially similar to La Resolana's architectural works of art or any structure which is exactly or substantially similar to La Resolana's architectural works of art which are the subject of the present case as shown in La Resolana's Complaint and exhibits thereto, including those architectural works of art which are being used by the Remaining Defendants to promote the Country Club Villas subdivision in Angel Fire, New Mexico in violation of the Lanham Act.

75.     Section 35(a) of the Lanham Act provides that, when a violation of § 43(a) has been established, the plaintiff shall be entitled to recover (1) the defendant's profits, (2) damages sustained, and (3) costs of the action. 15 U.S.C. § 1117(a). Section 35(b) permits the district court to award treble damages in appropriate circumstances. *Id.* ("In assessing damages under subsection (a) of this section, the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee[.]").

76.     La Resolana is entitled to recover profits, damages sustained and costs from the

Remaining Defendants pursuant to Section 35(a) of the Lanham Act.

77.   In light of the foregoing, the Remaining Defendants willfully and fraudulently intended to deceive the public concerning the origin of the goods. As such, this case is deemed "exceptional" as that term is used in Section 35 of the Lanham Act. *Western Diversified Services, Inc. v. Hyundai Motor America, Inc.*, 427 F.3d 1269, 1277 (10th Cir. 2005); 15 U.S.C. § 1117.

78.   Because the Court finds that the Remaining Defendants are willfully passing off La Resolana's Copyrighted Architectural Works as their own through the AFHD Drawings, the Court finds that such conduct was a deliberate theft of a La Resolana's intellectual property. *See Johnson v. Jones*, 149 F.3d 494, 503 (6th Cir. 1998).

79.   La Resolana is entitled to recover treble damages pursuant to Section 35(a) of the Lanham Act.  15 U.S.C. § 1117.

80.   The Court finds in favor of La Resolana and against the Remaining Defendants on all counts.  As a direct and proximate result of the Remaining Defendants' unlawful conduct, La Resolana has sustained damages under the United States Copyright Act, the United States Lanham Act and the New Mexico Unfair Trade Practices Act.

Dated this 17th day of July, 2006.

**SOUTHWEST INTELLECTUAL PROPERTY SVCS., LLC**

By: __Electronically Filed 7/17/06_____
    Kevin Lynn Wildenstein
Counsel for Plaintiff
9400 Holly Ave. NE, Bldg. 4, Ste. H
Albuquerque, New Mexico  87122
(505) 944-2500
(505) 944-2501 (fax)

PLAINTIFF'S REVISED PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW

- and –

**MILLER STRATVERT PA**
H. Brook Laskey
Gary Gordon
Miller Stratvert PA
PO Box 25687
Albuquerque, New Mexico  87125
(505) 842-1950

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing
pleading was transmitted by electronic mail to the following
counsel of record this 17th day of July, 2006:

Dewitt M. Morgan
Rodey, Dickason, Sloan, Akin & Robb
P.O. Box 1888
Albuquerque, New Mexico  87103
Atty for Lance Clay, Reno, Inc.
mmorgan@rodey.com

Randy S. Bartell, Esq.
Montgomery & Andrews
325 Paseo de Peralta
Santa Fe, New Mexico  87501
Atty for Plante Defendants
rbartell@montand.com

Michael Plante
P.O. Box 67824
Albuquerque, New Mexico  87193-7824
Atty for Plante Defendants
cmcllc@msn.com

**Southwest Intellectual Property Services, LLC**

By: __Electronically Served 7/17/06_____

PLAINTIFF'S REVISED PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW