IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

---

LA RESOLANA ARCHITECTS, PA,
a New Mexico Corporation,

      Plaintiff,

vs.

RENO, INC. dba CLAY REALTORS
ANGEL FIRE, a New Mexico
Corporation, SOUTHWEST
INVESTMENT TRUST, LP, a New
Mexico Limited Partnership, LANCE
K. CLAY, an individual, GARY
PLANTE, an individual, and ANGEL
FIRE HOME DESIGN, a New Mexico
Corporation,

      Defendants.

No. 05cv1017 PK/RHS

---

FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

THIS MATTER came on for trial before the Hon. Paul J. Kelly, Jr., sitting

by designation, without a jury on June 12, 13 and 14, 2006.  Plaintiff La Resolana

Architects, P.A. appeared by Earl Hilchey, and was represented by Kevin

Wildenstein, Esq., and Gary Gordon, Esq.  Defendants Reno, Inc. dba Clay

Realtors Angel Fire, and Lance K. Clay appeared by Lance K. Clay and were

represented by DeWitt ("Mike") Morgan, Kurt Gilbert and Todd Rinner.

Defendants Southwest Investment Trust, L.P. and Gary Plante, appeared by Gary

Plante (on July 14, 2006), and were represented by Randy Bartell, Esq., Jeff

Wechsler, Esq. and Michael Plante, Esq.  The parties stipulated to the dismissal of Defendant Angel Fire Home Design.  The court, having heard the evidence, reviewed the pleadings and briefs submitted by the parties, and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

<u>Findings of Fact</u>

1.  Plaintiff La Resolana Architects, P.A. filed suit[1] against Reno, Inc. d/b/a Clay Realtors and Lance Clay, individually, hereinafter collectively "Clay" and Southwest Investment Trust, L.P., and Gary Plante, individually, hereinafter collectively "Plante" seeking injunctive relief and damages for alleged copyright infringement (count I), violation of the New Mexico Unfair Trade Practices Act (count II) and for unfair competition under the Lanham Act, § 43(a) (count III). Thereafter, Plaintiff sought a preliminary injunction   The court consolidated the trial of the matter with the hearing on the preliminary injunction and granted a motion to bifurcate the issue of liability from damages.  Fed. R. Civ. P. 45(b); 65(a)(2).

2.  In December 1996, prior to the formation of La Resolana Architects,

---

[1]  The Tenth Circuit upheld the dismissal La Resolana's previous suit for copyright infringement for want of actual registration. <u>La Resolana Architects, PA v. Clay Realtors Angel Fire</u>, 416 F.3d 1195, 1208 (10th Cir. 2005).

P.A. ("La Resolana"),  Earl Hilchey ("Hilchey"), a licensed architect, attended a meeting at the offices of Preferred Building Systems ("Preferred") with Clay and Plante together with Larry Jones, a representative of Preferred, and Dan Beheles.

3.  At that meeting, Clay sketched out and gave to Hilchey a drawing of a U-shaped pair of homes, each home containing two bedrooms, with the single car garage of each home abutting along a common lot line.  Clay was interested in building in Angel Fire, New Mexico.  Clay explained in detail exactly what he wanted, including exterior details.

4.  Clay had been exploring the economics of a real estate development in Angel Fire.  He had been investigating different suppliers of modular buildings[2] in Colorado and Nebraska in connection with his desire to develop a parcel of land in Angel Fire.

5.  The purpose of the meeting was to determine whether Preferred, also a supplier of modular buildings, would be able to supply Clay with economically priced units to be assembled on site in Angel Fire.

6.  At that meeting Clay and Plante were under the impression that Hilchey was an employee of Preferred.

7.  At no time did Clay or Plante enter into any agreement or contract with Hilchey or Preferred, though Plante received a quote (and only a quote) from

---

[2]  Sometimes called manufactured or prefabricated buildings.

Jones of Preferred.  Ultimately, Clay determined that modular homes could not be utilized for his proposed development.

8.  At no time did Clay or Plante have any contractual agreement with La Resolana.

9.  Hilchey prepared a schematic of the building (floor plan) together with a building elevation and tried to send it by fax to Clay and Plante.  The materials were faxed to numbers belonging to two different Albuquerque law firms.  None of the faxes purportedly sent by Hilchey were the subject of the copyright registration.

10.  Clay had no connection or relationship with either law firm and while Plante did at one time have a relationship with one of the firms (Lamb, Metzger, Lines and Dahl),[3] neither Clay nor Plante ever received or saw copies of Hilchey's drawings concerning the schematic and elevation.[4]  Those drawings attached to the copyright registration were never sent to or received by Clay and Plante.  Although there was an exchange of faxes between Plante, Clay and Hilchey concerning a site plan, the number of units, and square footage estimates, Ex. 6, 7, 16 & 17, none of the drawings or other information conveyed is the

---

[3]  Plante testified that after the death of Larry Lamb in 1996, he came into the Lamb law firm less and less, and that if he did not pick up messages or faxes, they would be discarded.  Tr. 848, 854.

[4]  The other law firm was Behles and Associates.  No evidence suggests that Behles, if he received such faxes, passed them on to Clay or Plante.

subject of the copyright registration.

11.  Clay advised Hilchey that the minimum heated square footage required by Angel Fire land use ordinance was 1200 square feet.  The maximum square footage depicted in Hilchey's schematic was less than 1200 square feet, see Ex. 1-D (1181 sq. ft.) and as such would not have been approved by the Angel Fire land use authorities.

12.  Neither Clay nor Plante ever received the schematic or the elevation that Hilchey attempted to send.  Neither Clay nor Plante nor Charles Hasford ("Hasford") had the opportunity to view or copy the subject of the copyright registration.  Based upon his demeanor and his knowledge of the origins of his development project, I found Clay a very credible witness.

13.  Hilchey never heard from either Clay or Plante after 1997.

14.  Hilchey went to Angel Fire in 2003 and observed what he thought was a development with homes that looked similar to his schematic and elevation.

15.  La Resolana was not incorporated until October 1997.  Prior thereto, including at the time he drafted the schematic and elevation, Hilchey did business as a sole proprietorship.

16.  La Resolana purported to copyright a schematic and elevation drawings appended to Ex. 1 (labeled 1-C, 1-D) in 2003, more than five years after first publication.

17.  The Copyright Certificate of Registration, Ex. 1-A, erroneously lists La

Resolana Architects, P.A. as the author, erroneously lists the work as a "work for hire," and does not reflect any other contributor to the work, although Clay was the originator of the design.

18.  By assignment dated July 29, 2004, Ex. 53, Hilchey purported to assign all rights in and to the schematic drawing and elevation to La Resolana, effective April 1, 1997, which was prior to the date of La Resolana's incorporation.

19.  As reflected in Exs. 53-C & 53-D, the incomplete copyright Form VA appended to the assignment form, unlike the originally issued copyright, reflects the author as Earl W. Hilchey, recites that it was not a work for hire and is otherwise incomplete.

20.  Clay contacted Angel Fire Home Design in March 1998, and hired Hasford, to prepare construction drawings for his Angel Fire development.

21.  As he had done with Hilchey, Clay provided Hasford with a sketch of his ideas as well as his requirements.  Clay again explained in detail exactly what he wanted, including exterior details.

22.  Clay did not give Hasford any drawings done by Hilchey or La Resolana.

23.  Hasford prepared detailed construction drawings as well as a schematic and building elevations, all as directed by Clay.  The heated living area was in excess of 1200 square feet to comply with applicable land use requirements.  The

-6-

roof pitch was 5/12 also as required.

24.  The plans and drawings prepared by Hasford, including the schematic and elevations, were not copied or derived from anything done by Hilchey or La Resolana.

25.  Clay is the original author of the idea or concept embodied in La Resolana's schematic and elevation as well as Hasford's construction drawings. The Defendants made no false or misleading statements as to the origin or ownership of any aspect of the plan or design.

26.  The work done by Hasford, although similar to the drawings prepared by Hilchey due to the express and detailed instructions of Clay, was independently created without reference to any prior work of Hilchey or La Resolana.  Hasford's testimony was extremely credible; I base this upon his clear, direct and logical answers, and demeanor.

27.  Each side offered expert testimony with respect to the similarity or lack thereof of the works.

28.  La Resolana's expert (Jonathan Siegel) conceded that Hasford's drawings were not copies of copyrighted work by Hilchey or La Resolana.

29.  There are numerous and significant differences between La Resolana's copyrighted drawings and the drawings prepared by Hasford.  The two sets of drawings include major differences in the kitchen area, living area, master bath and roof slope, placement of doors, placement of plumbing, placement of door

openings, all of which affect traffic-flow and articulation of space.  These
differences so outweigh any similarities that the similarities are inconsequential
within the total context of the work.  Hasford's construction drawings are not
strikingly similar or even substantially similar to the subject of La Resolana's
copyright.

30.  Given the obvious differences, the court finds the testimony of La
Resolana's expert incredible and not worthy of belief.

31.  The construction plans produced by Hasford and utilized by Clay are
not derivative works.

32.  Following the initial meeting with Preferred, Plante and Clay agreed
that they would not engage in a joint venture concerning the proposed
development.

33.  There was no agreement of any kind between Plante and Clay
regarding the construction of dwellings other than Plante agreed to sell, and Clay
agreed to purchase, parcels of property as the development progressed.

34.  Other than the sale of lots pursuant to the purchase agreement, Ex. 28,
Plante has no interest in Clay's development project.

35.  Plante does not share in the control of the project nor in any profits or
losses that may be realized by Clay.

36.  Plante did not receive any drawings from Hilchey, Hasford or Jones
(from Preferred), and at no time did Plante deliver any such drawings to Clay or

Hasford.

37.  There has been no showing of irreparable injury by La Resolana, and no showing of potential for success on the merits.

38.  Neither Clay nor Plante have made any oral or written statements that are false or misleading in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or collection of debts.

39.  Neither Clay, Plante nor Hasford made any false or misleading representations to anyone.

40.  Neither Clay nor Plante passed off or repackaged any of Hilchey's or La Resolana's drawings or work to sell as their own.

41.  The drawings utilized to construct homes being built by Clay did not originate with Hilchey or La Resolana.

<u>Conclusions of Law</u>

1.  The court has jurisdiction over the parties and subject matter.  Venue is proper in the District of New Mexico.

2.  Defendants did not violate or infringe any copyright that Plaintiff might have.  They did not contribute to any violation.  There was no access and no substantial similarity.  See <u>Autoskill Inc. v. Nat'l Educ. Support Sys. Inc.</u>, 994 F.2d 1476, 1489 (10th Cir. 1993).

3.  The Defendants have not engaged in any unfair trade practices in

violation of the New Mexico Unfair Trade Practices Act.

4.   The Defendants have not violated the Lanham Act either by "reverse passing off" or by "repackaging" or by "false advertising."

5.   Plaintiff is not entitled to injunctive relief.

6.   For these reasons, the court should deny La Resolana's Motion for Premlinary Injunction filed February 23, 2006 (Doc. 35), La Resolana should take nothing on its complaint, the court should dismiss the action on the merits, and the court should award costs to Defendants.

DATED this <u>2nd</u> day of August 2006, at Santa Fe, New Mexico.

Paul Kelly Jr.
United States Circuit Judge
Sitting by Designation